# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM WALTZ, | Case No. 1:25-cv-01282-KES-EPG-HC |
| Petitioner, | FINDINGS AND RECOMMENDATION, RECOMMENDING DENIAL OF PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| T. MIRANDA, | (ECF No. 1) |
| Respondent. | |

Petitioner William Waltz is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus under 28 U.S.C. § 2254. Petitioner argues that (1) there was insufficient evidence to convict him of arson; and (2) his restitution was wrongly calculated.

For the reasons given below, the undersigned recommends denying the petition for writ of habeas corpus.

## I.

## BACKGROUND

A jury in the Superior Court of Madera County convicted Petition "of seven counts of arson to forest land in violation of Penal Code section 451, subdivision (c)." *People v. Waltz*, No. F083591, 2023 WL 2783260, at *1 (Cal. Ct. App. Apr. 5, 2023). "The trial court sentenced [Petitioner] to prison for an aggravated term of 23 years." *Id.*

On April 5, 2023, the California Court of Appeal, Fifth Appellate District affirmed the judgment but remanded the matter for resentencing based on retroactive changes in the law. *Id.* at *1, 5. On June 21, 2023, the California Supreme Court denied the petition for review. (ECF

1

No. 12-30, p. 1).

"In January 2024, the trial court resentenced [Petitioner,]" which resulted in "a total prison sentence of 21 years." *People v. Waltz*, No. F087518, 2024 WL 4432510, at *1 (Cal. Ct. App. Oct. 7, 2024). Petitioner appealed, and the California Court of Appeal, Fifth Appellate District affirmed the judgment on October 7, 2024. *Id.* at *2.

Petitioner filed multiple state habeas petitions, which were all denied. (ECF No. 12-31 – 12-36).

On September 29, 2025, Petitioner filed his federal habeas petition, challenging the sufficiency of the evidence for his arson conviction and the determination of his restitution. (ECF No. 1, pp. 2, 3).

Respondent filed the state court record on November 24, 2025, and an answer on November 25, 2025. (ECF Nos. 12, 13). Petitioner did not file a traverse, and the time to do so has expired under the Court's scheduling order. (ECF No. 5, p. 2).

## II.

## STATEMENT OF FACTS[1]

Appellant did not testify on his own behalf at trial and he did not call any witnesses. We summarize the material facts that support appellant's judgment.

The prosecution established that, on August 30, 2020, appellant started fires on private pasture land located in Madera County. The area in question was just under 10,000 acres used for cattle and horses. This land was fenced off and closed to the public. Appellant did not have permission to be on this real property.

On the morning in question, appellant started seven different fires. The first fire was spotted around 7:15 a.m. At around the same time, or shortly thereafter, smoke from other fires was seen at other locations on the property. The smoke from the last fire was not spotted until over an hour later. Over 100 CAL FIRE personnel responded to suppress these seven fires and nearly 700 acres were burned.

These fires generally occurred over rough terrain, and all seven fires burned "grassland."[2] Some of the fires were over a mile apart from each other, while others were around a half a mile apart. Two of the fires were only about 36 feet apart.

---

[1] The Court relies on the California Court of Appeal's April 5, 2023 opinion for this summary of the facts of the crime. *See Vasquez v. Kirkland*, 572 F.3d 1029, 1031 n.1 (9th Cir. 2009). Footnotes 2-4 below are footnotes contained within this opinion.

[2] Under the Penal Code, "grasslands" is included in the definition of "forest land" for purposes of arson. (§ 450, subd. (b).)

On the morning in question, appellant was spotted in the vicinity of the seventh fire as CAL FIRE personnel worked in that area. Appellant was with his dog. Appellant appeared "very jittery" as if he were under the influence of drugs. A firefighter asked appellant if he knew how that fire started, and appellant responded that he had started the fires. Appellant was detained that morning by law enforcement officials and he was questioned. His statements were recorded and played for the jury. He admitted that he had started the fires. Appellant indicated he had used a lighter when it was still dark outside.[3] He stated that his lighter was out of fluid and he could only make it spark, which made it harder to start the fires. Appellant appeared tired and disheveled. His dog looked "very tired."

Throughout his various discussions with fire personnel, appellant made bizarre statements. He told a firefighter that he had killed five people in a nearby house. Emergency personnel, however, checked and learned that nobody had been killed in that residence. In a series of other rambling statements, appellant told other officials that he had started these fires because people, drones and vehicles had been chasing him during the night. He said he had been running all night, and he set the fires so he could receive help.

The prosecution established that, at some unknown point, appellant had been camping on the private pasture land without permission.[4] A very used lighter was recovered from appellant's campsite. It did not have lighter fluid inside it. The grinder wheel on the lighter was very worn, and it only produced a very small spark. An improvised smoking device was also located at the campsite. That smoking device could have been used to ingest some sort of narcotic, such as methamphetamine.

After ruling out other possible causes, an arson investigator opined at trial that all seven fires were probably ignited by an open flame device, such as a lighter. Even without appellant's statements, and based on his own investigation, the arson investigator was "very certain" that arson had caused all seven fires. The investigator believed that the results of his investigation were consistent with appellant's claim that he had started these fires with a lighter that had no fluid.

*Waltz*, 2023 WL 2783260, at *1-2.

### III.

### STANDARD OF REVIEW

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); *Williams v. Taylor*, 529 U.S. 362, 375 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution. (ECF No. 1, pp. 2, 3). The underlying case arises

---

[3] The sun was up and it was "bright" outside when the fires were first spotted.

[4] Appellant's campsite was discovered about two months after the fires occurred. Two prescription bottles were located there, and one had appellant's name on it.

out of the Superior Court of Madera County, which is located within the Eastern District of California. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d); Local Rule 120(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which applies to all petitions for writ of habeas corpus filed after its enactment. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Jeffries v. Wood*, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc). The instant petition was filed after the enactment of AEDPA and is therefore governed by its provisions.

Under AEDPA, relitigation of any claim adjudicated on the merits in state court is barred unless a petitioner can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Davis v. Ayala*, 576 U.S. 257, 268–69 (2015); *Harrington v. Richter*, 562 U.S. 86, 97–98 (2011); *Williams*, 529 U.S. at 413.

Thus, if a petitioner's claim has been "adjudicated on the merits" in state court, "AEDPA's highly deferential standards" apply. *Ayala*, 576 U.S. at 269. However, if the state court did not reach the merits of the claim, the claim is reviewed *de novo*. *Cone v. Bell*, 556 U.S. 449, 472 (2009).

In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412. In addition, the Supreme Court decision must "'squarely address[] the issue in th[e] case' or establish a legal principle that 'clearly extend[s]' to a new context to the extent required by the Supreme Court in . . . recent decisions"; otherwise, there is no clearly established Federal law for purposes of review under AEDPA and the Court must defer to the state court's decision. *Moses v. Payne*, 555 F.3d 742, 754 (9th Cir. 2008) (alterations in original) (quoting *Wright v. Van Patten*, 552 U.S. 120, 125, 123 (2008)).

If the Court determines there is clearly established Federal law governing the issue, the

Court then must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, [the] clearly established Federal law." 28 U.S.C. § 2254(d)(1). A state court decision is "contrary to" clearly established Supreme Court precedent if it "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. A state court decision involves "an unreasonable application of[] clearly established Federal law" if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." *Richter*, 562 U.S. at 102. That is, a petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

If the Court determines that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law," and the error is not structural, habeas relief is nonetheless unavailable unless it is established that the error "had substantial and injurious effect or influence" on the verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (internal quotation mark omitted) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

AEDPA requires considerable deference to the state courts. Generally, federal courts "look through" unexplained decisions and review "the last related state-court decision that does provide a relevant rationale," employing a rebuttable presumption "that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 584 U.S. 122, 125 (2018). This presumption may be rebutted "by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed." *Id.*

"When a federal claim has been presented to a state court[,] the state court has denied relief," and there is no reasoned lower-court opinion to look through to, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-

law procedural principles to the contrary." *Richter*, 562 U.S. at 99. Where the state court reaches a decision on the merits and there is no reasoned lower-court opinion, a federal court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013). "Independent review of the record is not *de novo* review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). The federal court must review the state court record and "must determine what arguments or theories . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Richter*, 562 U.S. at 102.

**IV.**

**REVIEW OF CLAIMS**

**A.  Sufficiency of the Evidence**

**1.  Procedural default**

Respondent argues that Petitioner's sufficiency-of-the evidence claim is barred by California's "*Dixon* bar because Petitioner's claim could have been raised on direct appeal but was not."[5] (ECF No. 13, p. 8). "Under the so-called '*Dixon* bar,' a defendant procedurally defaults a claim raised for the first time on state collateral review if he could have raised it earlier on direct appeal." *Johnson v. Lee*, 578 U.S. 605, 606 (2016) (citing *In re Dixon*, 41 Cal. 2d 756, 759, 264 P. 2d 513, 514 (1953)). Additionally, Respondent argues that the claim is barred by California's so-called *Lindley* bar "because Petitioner should have brought any insufficient-evidence claim to that court on direct review" but did not. (*Id.*). "*Lindley* stands for the California rule that a claim of insufficiency of evidence can only be considered on direct appeal, not in habeas proceedings." *Carter v. Giurbino*, 385 F.3d 1194, 1196 (9th Cir. 2004) (discussing *In re Lindley*, 29 Cal.2d 709, 177 P.2d 918 (1947)).

A federal court will not review a petitioner's claims if the state court has denied relief on

---

[5] Alternatively, Respondent argues that this claim likewise fails on the merits. The Court discusses this argument below.

those claims pursuant to a state law procedural ground that is independent of federal law and adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991). This doctrine of procedural default is based on the concerns of comity and federalism. *Id.* at 730–32. In determining whether a state procedural ruling bars federal review, the Court looks to the "last reasoned opinion on the claim." *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). However, a procedural default can only bar a claim in federal court if the state court "clearly and expressly states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989).

"[A] procedural default based on an ambiguous order that does not clearly rest on independent and adequate state grounds is not sufficient to preclude federal collateral review." *Valerio v. Crawford*, 306 F.3d 742, 774 (9th Cir. 2002) (en banc) (citation omitted) (quoting *Morales v. Calderon*, 85 F.3d 1387, 1392 (9th Cir.1996)). Where a state court denies a habeas petition containing multiple claims, does not "specify which claims were barred for which reasons," *Valerio*, 306 F.3d at 775, and "affords no basis for choosing between a state law ground that would bar federal review, and one that would not, that decision cannot bar federal review," *Koerner v. Grigas*, 328 F.3d 1039, 1052 (9th Cir. 2003).

Lastly, because "[p]rocedural default is an affirmative defense, . . . the state has the burden of showing that the default constitutes an adequate and independent ground." *Insyxiengmay v. Morgan*, 403 F.3d 657, 665 (9th Cir. 2005).

> Once the state has adequately pled the existence of an independent and adequate state procedural ground as an affirmative defense, the burden to place that defense in issue shifts to the petitioner. The petitioner may satisfy this burden by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule. Once having done so, however, the ultimate burden is the state's.

*Bennett v. Mueller*, 322 F.3d 573, 586 (9th Cir. 2003).

On March 5, 2025, Petitioner filed a state court habeas petition before the California Supreme Court raising two claims: (1) insufficiency of the evidence; and (2) a challenge to his restitution. (ECF No. 12-35, pp. 9-10). The arguments in his state habeas petition are identical to those in his federal petition. (*Compare* ECF No. 1, pp. 2-3; *with* ECF No. 12-35, pp. 9-10).

The California Supreme Court denied the petition on July 9, 2025, stating as follows:

> The petition for writ of habeas corpus is denied. (See People v. Duvall (1995) 9 Cal.4th 464, 474 [a petition for writ of habeas corpus must include copies of reasonably available documentary evidence]; In re Dixon (1953) 41 Cal.2d 756, 759 [courts will not entertain habeas corpus claims that could have been, but were not, raised on appeal]; In re Swain (1949) 34 Cal.2d 300, 304 [a petition for writ of habeas corpus must allege sufficient facts with particularity].) Individual claims are denied, as applicable. (See In re Lindley (1947) 29 Cal.2d 709, 723 [courts will not entertain habeas corpus claims that attack the sufficiency of the evidence].)

(ECF No. 12-36, p. 1) (emphasis added).

Respondent does not argue that the California Supreme Court clearly and expressly stated that its decision to deny Petitioner habeas relief on his insufficiency-of-the-evidence claim was premised on the *Dixon* and *Lindley* state procedure bars.

Notably, the Ninth Circuit addressed a similar issue in *Calderon v. U.S. Dist. Ct. for E. Dist. of California*, 96 F.3d 1126 (9th Cir. 1996). There, the California Supreme Court denied thirty-nine claims in an order citing three California state cases "but did not indicate which bar applied to which [of the habeas] claims." *Id.* at 1131. The Ninth Circuit concluded that there was no procedural bar because the order was ambiguous as it did "not specify which of [the] thirty nine-claims" it rejected under which of the state cases it cited. *Id.*

Citing *Calderon*, the Ninth Circuit determined in a later case that, if any one of the cases cited in such a state court decision are not independent and adequate state procedural bars, then a petitioner's habeas claims are not procedurally defaulted. *Washington v. Cambra*, 208 F.3d 832, 834 (9th Cir. 2000) ("In examining the *Swain* and *Dixon* procedural bars, we may reverse the dismissal if either rule is not adequate and independent. This is so because the California Supreme Court invoked both rules without specifying which rule applied to which of Washington's two claims.").

With this authority in mind, the California Supreme Court's decision is ambiguous because it cites four cases—*Duvall*, *Dixon*, *Swain*, and *Lindley*—without indicating which of these cases barred which of Petitioner's two claims. Additionally, case authority notes uncertainty about whether *Duvall* and *Swain* constitute independent and adequate state grounds to bar habeas relief. *See, e.g., Stan v. Barnes*, No. CV 11-2883-AG PLA, 2014 WL 1715525, at *5 (C.D. Cal. Mar. 19, 2014), *report and recommendation adopted*, No. CV 11-2883-AG PLA,

2014 WL 1716069 (C.D. Cal. Apr. 30, 2014) ("Here, even though federal courts have found that *Robbins* constitutes an independent and adequate state ground, *Walker v. Martin*, ——U.S. ——, —— – ——, 131 S.Ct. 1120, 1129–30, 179 L.Ed.2d 62 (2011), whether *Duvall* and *Swain* constitute such grounds is less clear.").

Furthermore, under similar circumstances, other courts have declined to find a procedural bar. *See, e.g., Qahhaz v. Gibson*, No. 2:13-CF-2338 GEB DAD, 2014 WL 6686270, at *8 n.7 (E.D. Cal. Nov. 26, 2014) ("Respondent points out that the Ninth Circuit has ruled that the rule set forth in *Lindley* is "an independent and adequate state procedural bar." *Carter*, 385 F.3d at 1198. However, in the instant case petitioner raised three claims in his state habeas petition and the California Supreme Court denied the entire petition with a citation to five different state court cases [*Duvall*, *In re Waltreus*, 62 Cal.2d 218, 42 Cal.Rptr. 9, 397 P.2d 1001 (1965), *Dixon*, *Swain*, and *Lindley*]. That differentiates this case from *Carter*, where the petitioner alleged only one claim and the California courts rejected that claim with a sole citation to *Lindley*. *Id.* at 1196. In light of these differences, the California Supreme Court's citation to *In re Lindley* in this case does not necessarily establish a valid procedural bar."); *Reddick v. Felker*, No. CIVS-07-1148-JAM-CHS P, 2009 WL 3165371, at *4 n.4 (E.D. Cal. Sept. 29, 2009) (finding no procedural default where the California Supreme Court denial cited *Swain*, *Duvall*, and *In re Lindley*, 29 Cal.2d 709, 177 P.2d 918 (1947), even though *Lindley* had been found to be independent and adequate because "each of the three cited cases [needed to] provide[] an independent and adequate basis under state law for the decision"); *Mass v. Dexter*, No. CV 07-04625 RGK AN, 2008 WL 586861, at *1–2  (C.D. Cal. Jan. 25, 2008) (finding no procedural default where the California Supreme Court denial cited *Dixon*, *Lindley*, and *Waltreus* and "fail[ed] to specify which claims were barred for which reasons, and . . . bas[ed] its decision at least in part on citations which do not independently bar review').

Accordingly, the Court declines to recommend that Petitioner's insufficiency-of-the-evidence claim be deemed procedurally barred.

### 2.  Merits

Turning to the merits, Petitioner argues that his "arson conviction was based on insufficient evidence." (ECF No. 1, p. 2). He argues that he "was in a distressed state of mind

when he was followed by a drone . . . and he was setting fire to signal for help." (ECF No. 1, p. 2). And despite the trial court ordering a psychological evaluation, it "did not allow the admission of this evidence to negate his crime even as the court acknowledged that he 'apparently suffers from a mental defect' that had some impact on his culpability." (*Id.*).

Further, he contends as follows:

> Arson: with its statutory language of "willfully and maliciously" in describing the act of setting fire, could be construed as a specific intent crime. Evidence tending to prove defendant's inability to entertain specific intent is mitigating in nature and would have required reversal. *People v. Wetmore*, 22 Cal.3d 318.
>
> Even if arson was not a specific intent crime, mental state evidence is admissible to negate an element of the crime. *People v. Visciotti*, 2 Cal.4th at 56-57. One of the elements of arson is intent and malice as set out in subdivision (a) of PC 451. Insofar as mental state evidence may negate malice, and the negation of malice would obviate and reduce the charged offense to a lesser offense (People v. Saille (1991) 54 Cal.3d 1103, 1114-17). The court's failure to allow admission of evidence of extreme fear and duress was prejudicial in depriving Defendant of the· opportunity to negate and reduce arson to a lesser crime.

(*Id.*) (minor alterations for readability).

Respondent raises two arguments in response. First, Respondent argues that the evidence "at trial was overwhelming." (ECF No. 13, p. 9).

> There was testimony from half a dozen witnesses who witnessed the seven fires lit on rural, rolling grasslands; four of them witnessed Petitioner fleeing while they were trying to fight the fires. (ECF No. 12-16 at 3930, 3937-3939, 3943-3944, 3968-3970, 3978-3994, 4053, 4056-4060; ECF No. 12-17 at 4209-4212, 4215-4220, 4228-4230, 4244-4247, 4302-4303, 4310; ECF No. 12-1 at 234-236.) Two witnesses testified that Petitioner confessed to lighting the fires. (ECF No. 12-17 at 4217, 4228-4230, 4309-4315.) Petitioner's own *Mirandized* confession to the arsons was admitted into evidence. (ECF No. 12-1 at 238-264.) There was evidence that Petitioner had a campsite and vehicle on the burned property. (ECF No. 12-12 at 4068-4070, 4923-4924, 4933-4936, 4969; ECF No. 12-19 at 4928-4931, 4934-4935, 5001-5002, 5007-5008.) An expert testified that the fires were all started by an open-flamed incendiary device like a lighter. (ECF No. 12-18 4527-4542, 4547-4548, 4552-4559, 4575.) And the lighter found at Petitioner's campsite was admitted, along with the expert's opinion that this lighter was used to start the fires. (ECF No. 12-1 at 222, 226 [Exhibit 26]; ECF No. 12-18 at 4527-4542, 4547-4548, 4552-4559, 4574.) Petitioner called no witnesses, introduced no evidence, and did not testify in his own defense. (ECF No. 12-1 at 223-226.) Based on the evidence, there was plenty of basis for the state court to reasonably conclude there was sufficient evidence to convict Petitioner.

(*Id.* at 9-10).

Second, Respondent argues that the portion of Petitioner's argument about the failure to admit evidence regarding his mental state is not a true sufficiency-of-the-evidence claim:

> Now on federal habeas, Petitioner contends that there was insufficient evidence because "the court's failure to allow admission of evidence of extreme fear and duress was prejudicial in depriving Defendant of the opportunity to negate and reduce arson to a lesser crime." (Pet. at 2.) This is not an argument under *Jackson*[,] 443 U.S. at 326. It is a claim of wrongfully excluded evidence. The trial court rejected Petitioner's attempt at trial to admit evidence of his mental infirmity to negate his criminal liability, because such a defense is inapplicable to arson under California law. (ECF No. 12-14 at 3435-3439.) The California Supreme Court's rejected this argument on state habeas as well, procedurally and alternatively on the merits. (*See* Arg. I.B.) To the extent this argument is proper and exhausted, Petitioner still has not explained how it is a cognizable federal claim, as California law fully resolves the evidence admission issue.

(*Id.* at 10).

Because it is not clear that the California Supreme Court reached the merits of this claim, the Court will apply de novo review. *Baird v. Muniz*, No. EDCV 16-02202-R (KS), 2017 WL 3575876, at *7 and *7 n.3 (C.D. Cal. July 12, 2017), *report and recommendation adopted*, No. EDCV 16-2202-R (KS), 2017 WL 3575228 (C.D. Cal. Aug. 14, 2017) ("Generally, a state court's denial of a state habeas petition with citations to *Swain* and *Duvall* reflects a decision that the petition was procedurally defective owing to inadequate pleading, not a decision on the merits," and, "[i]n such cases, the denial does not merit AEDPA deference and the federal habeas court applies *de novo* review"); *see also Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010) ("Courts can, however, deny writs of habeas corpus under § 2254 by engaging in *de novo* review when it is unclear whether AEDPA deference applies, because a habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on *de novo* review, see § 2254(a).").

When reviewing a sufficiency of the evidence claim, a court must determine whether, viewing the evidence and the inferences to be drawn from it in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). A reviewing court "faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in

favor of the prosecution, and must defer to that resolution." *Id.* at 326. State law provides "for 'the substantive elements of the criminal offense,' but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." *Coleman v. Johnson*, 566 U.S. 650, 655 (2012) (quoting *Jackson*, 443 U.S. at 319). "A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011).

With these standards in mind, the Court turns to California's elements of the crime of arson.

> "A person is guilty of arson when he or she willfully and maliciously sets fire to or burns or causes to be burned or who aids, counsels, or procures the burning of, any structure, forest land, or property." (§ 451.) "Willfully" is defined not in the arson chapter, but in section 7, item 1: "The word 'willfully,' when applied to the intent with which an act is done or omitted, implies simply a purpose or willingness to commit the act, or make the omission referred to. It does not require any intent to violate law, or to injure another, or to acquire any advantage." The arson chapter defines "maliciously" as involving "a wish to vex, defraud, annoy, or injure another person, or an intent to do a wrongful act, established either by proof or presumption of law." (§ 450, subd. (e).) This is the same definition as found in section 7, item 4, except for the inclusion of "defraud" in section 450.

> In *Atkins*, we held that arson requires only a general criminal intent and that the specific intent to set fire to, burn, or cause to be burned the relevant structure or forest land is not an element of arson. In reaching that conclusion, we examined the statutory terms "willfully" and "maliciously," and explained: " '[T]he terms "willful" or "willfully," when applied in a penal statute, require only that the illegal act or omission occur "intentionally," without regard to motive or ignorance of the act's prohibited character.' [Citation.] 'Willfully implies no evil intent; "'it implies that the person knows what he is doing, intends to do what he is doing and is a free agent.' [Citation.]" ' [Citations.] The use of the word 'willfully' in a penal statute usually defines a general criminal intent, absent other statutory language that requires 'an intent to do a further act or achieve a further consequence.' [Citations.]" (*Atkins, supra*, 25 Cal.4th at p. 85, 104 Cal.Rptr.2d 738, 18 P.3d 660.) Similarly, the statutory definition of "maliciously," in the context of arson, requires no specific intent to do a further act or achieve a future consequence. (*Id.* at pp. 85–86, 104 Cal.Rptr.2d 738, 18 P.3d 660.)

*In re V.V.*, 51 Cal. 4th 1020, 1027, 252 P.3d 979, 982–83 (2011).

Here, there is no dispute that Petitioner "set fire" to "forest land." Instead, Petitioner challenges the sufficiency of the evidence that he acted "willfully and maliciously."

First, contrary to Petitioner's contention that arson "could be construed as a specific intent crime," (ECF No. 1, p. 2), the California Supreme Court's discussion in *V.V.* makes clear that arson is not a specific intent crime because "arson requires only a general criminal intent." 51 Cal. 4th at 1027.

Second, there was sufficient evidence to conclude that Petitioner's actions were willful— *i.e.*, there was a purpose or willingness to set the fires. As the California Court of Appeal, Fifth Appellate District noted on direct appeal, among other things, Petitioner "was spotted in the vicinity of the seventh fire," "admitted that he had started the fires," and explained how "he had used a lighter when it was still dark outside." Moreover, Petitioner had a campsite on private pasture land, "[a] very used lighter was recovered from [the] campsite," and "an arson investigator opined at trial that all seven fires were probably ignited by an open flame device, such as a lighter." *Waltz*, 2023 WL 2783260, at *1–2.

Third, there was sufficient evidence to conclude that Petitioner's actions were malicious—*i.e.*, that he intended to do a wrongful act. As noted in *V.V.*, malice "need not take the form of malevolence or ill will." 51 Cal. 4th at 1028. In what is called "[m]alice in law," "malice will be presumed or implied from the deliberate and intentional ignition or act of setting a fire without a legal justification, excuse, or claim of right." *Id.* As noted above, Petitioner admits he deliberately set the fire. Moreover, Petition does not claim there was any legal justification for the setting of the fire.

In short, viewing the evidence and the inferences to be drawn from it in a light most favorable to the prosecution, a rational trier of fact could have found the essential elements of arson beyond a reasonable doubt.

### 3.  Wrongful exclusion of evidence

Within the section of his petition arguing that there was insufficient evidence to convict him of arson, Petitioner argues that the trial court failed to admit evidence of a psychological evaluation from Dr. Zimmerman regarding his "mental state," which could have "negate[d] an element of the crime." (ECF No. 1, p. 2). Specifically, Petitioner cites Dr. Zimmerman's opinion that he was delusional and was not malingering or exaggerating his symptoms, which Petitioner argues could have negated the malice element by showing that he was in a distressed

state of mind when he set the fires. (ECF No. 1, pp. 1-2, 9).

As an initial matter, the Court agrees with Respondent that "[t]his is not an argument under *Jackson*" that there was insufficient evidence to convict Petitioner, but it is instead "a claim of wrongfully excluded evidence." (ECF No. 13, p. 10).

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (citations omitted) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)). However, a "defendant's right to present relevant evidence is not unlimited," and "state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials. Such rules do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *United States v. Scheffer*, 523 U.S. 303, 308 (1998) (quoting *Rock v. Arkansas*, 483 U.S. 44, 56 (1987)).

"Under this framework, the restriction of a defendant's evidence pursuant to an evidentiary rule is arbitrary when applying the rule serves no legitimate purpose in the case at hand." *Jones v. Davis*, 8 F.4th 1027, 1036 (9th Cir. 2021). "Exclusions of defense evidence may be arbitrary even when, 'under other circumstances, [the rule] might serve some valid state purpose.'" *Id.* (alteration in original) (quoting *Chambers v. Mississippi*, 410 U.S. 284, 300 (1973)). "And application of an evidentiary rule to preclude defense evidence, even when doing so 'legitimately serve[s]' a 'state's interest' in the case at hand, is disproportionate when it infringes excessively on a defendant's right to 'tell his own story.'" *Id.* (alteration in original) (quoting *Greene v. Lambert*, 288 F.3d 1081, 1091 (9th Cir. 2002)). "A trial court therefore may, consistent with the Constitution, exclude defense evidence through the proper application of evidentiary rules that serve a valid purpose in a given case, including when proposed evidence is 'only marginally relevant or poses an undue risk of harassment, prejudice, or confusion of the issues.'" *Id.* (quoting *Holmes v. South Carolina*, 547 U.S. 319, 326–27 (2006)).

With these standards in mind, Respondent cites to parts of the record that show that "[t]he

trial court rejected Petitioner's attempt at trial to admit evidence of his mental infirmity to negate his criminal liability, because such a defense is inapplicable to arson under California law." (ECF No. 13, p. 10).

The relevant portions of the state court record reveal that defense counsel wanted to argue that Dr. Zimmerman's "testimony was relevant to Mr. Waltz's state of mind and intent as far as what he was thinking." (ECF No. 12-14, p. 136. However, the prosecution argued that the testimony was "not relevant" under California law because arson was "a general intent crime, [thus,] the evidence of mental issues are not going to come in for his ability to form intent in this case." (*Id.* at 136, 138). The trial court agreed with this "position with regard to the law" and stated that "the testimony of Dr. Zimmerman would not be admitted for that purpose." (*Id.* at 139). This state law legal finding is binding on this Court. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus"). Moreover, as the trial court's decision is the last reasoned decision on the issue, the Court considers it for purposes of AEDPA deference. *See Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004) ("When applying [the AEDPA's] standards, the federal court should review the 'last reasoned decision' by a state court . . . .").

The Court notes that, under California law, "[e]vidence of [a] defendant's mental condition is not admissible to prove the absence of general intent." *People v. Jefferson*, 119 Cal. App. 4th 508, 519 (2004); *see* Cal. Penal Code § 28 ("Evidence of mental disease, mental defect, or mental disorder shall not be admitted to show or negate the capacity to form any mental state, including, but not limited to, purpose, intent, knowledge, premeditation, deliberation, or malice aforethought, with which the accused committed the act."). And California's evidentiary rules provide that "[n]o evidence is admissible except relevant evidence," Cal. Evid. Code § 350, and evidence is relevant if it has "any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action," Cal. Evid. Code, § 210. Considering these principles collectively, mental defects are irrelevant and thus inadmissible as a defense to a general intent crime. *See People v. Mills*, 55 Cal. 4th 663, 672, 286 P.3d 754, 759 (2012) (noting that "the defendant's sanity is irrelevant at the guilt

15

phase and evidence tending to prove insanity . . . is inadmissible").

With these standards in mind, because arson is a general intent crime as explained above, evidence as to Plaintiff's mental state, including Dr. Zimmerman's testimony, was irrelevant and thus inadmissible. *See People v. Nance*, 25 Cal. App. 3d 925, 928, 930 (Ct. App. 1972) (noting that "diminished mental capacity whether caused by intoxication, trauma or disease," is not an available defense to arson because "the crime of arson does not require a specific mental state which would permit assertion of the defense of diminished capacity").[6]

Because Petitioner had no right to present evidence that was irrelevant to the elements of arson, the trial court's decision was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of fact. *See Wood v. State of Alaska*, 957 F.2d 1544, 1549 (9th Cir. 1992) ("A defendant has no right, however, to present irrelevant evidence. It is within the trial court's discretion to determine which issues are relevant.") (citation omitted).

### B. Restitution

Petitioner's next claim argues that his "restitution was wrongly determined in violation of Due Process and Excessive Punishment under the 8th Amendment of the U.S Constitution." (ECF No. 1, p. 3). In support, he states as follows:

> Defendant was charged restitution for 700 acres of damage. The Calfire reports were contradictory in several aspects. Allegedly, there was a total of 7 fires, and, in one report, Calfire indicated the largest fire was 50 Acres (Exhibit 2) with the smallest fire being 3 acre (Exhibit 3). So the government's 700 acre estimate contradicted their own documented evidence because 50 acres times 7 is 350 acres at the most, not 700. The up-close photo of the allegedly charred 3 acres (Exhibit 4) shows that it was more like 300 square feet of charred grass, not 3 acres, which would be 139,000 square feet. Another report indicated the total acreage was 185 acres (Exhibit 5). Yet another report indicated the total acreage was 200 (Exhibit 6). All of this was grassland with no structure damage (Exhibit 6). The net profit for leasing grassland for grazing is around $25 to $30 per acre. See Mecom v. Morris, 2022 U.S Dist Lexis 78793, at 6. Insofaras restitution is part of a sentence, and an incorrect sentence may be corrected at any time (see People v. Scott (1994) 9 Cal. 4th 331, 354-55), Petitioner Waltz asks the Court to

---

[6] Likewise, to the extent that Petitioner would rely on evidence that he was "under the influence of drugs" and that a "smoking device" was found at his campsite that "could have been used to ingest some sort of narcotic, such as methamphetamine," *Waltz*, 2023 WL 2783260, at *2, "evidence of voluntary intoxication [is] not admissible on the issue of whether the defendant formed the required mental state for arson." *V.V.*, 51 Cal. 4th at 1027.

rectify the above.

(ECF No. 1, p. 3).

Respondent argues that this "claim is not cognizable on federal habeas review" because relief may not be granted "for errors of state law, including state sentencing determinations." (ECF No. 13, p. 10). The Court agrees.

Section 2254(a)'s language "explicitly requires a nexus between the petitioner's claim and the unlawful nature of the custody." *Bailey v. Hill*, 599 F.3d 976, 980 (9th Cir. 2010). The Ninth Circuit has specifically held that challenges to a state court's calculation of restitution does not raise a basis for federal habeas relief because:

> [a petitioner's] challenge to the restitution order lacks any nexus, as required by the plain text of § 2254(a), to his custody. While [petitioner]'s liberty has been severely restrained by his conviction and custodial sentence, the remedy that [petitioner] seeks, the elimination or alteration of a money judgment, does not directly impact—and is not directed at the source of the restraint on—his liberty.

*Id.* at 981.

Accordingly, Petitioner's challenge to his restitution is not a cognizable habeas claim thus fails. *Allen v. Samuels*, No. 1:23-CV-00503-HBK (HC), 2023 WL 3626272, at *2 (E.D. Cal. May 24, 2023), *report and recommendation adopted*, 2023 WL 4163000 (E.D. Cal. June 23, 2023) ("Petitioner's challenge to his restitution fine is not cognizable via a petition for writ of habeas corpus . . . ."); *Scott v. Compton Superior Ct.*, No. CV 20-3682-JVS (KK), 2020 WL 2797296, at *1 (C.D. Cal. May 28, 2020) ("[A] challenge to a non-custodial component of a sentence, i.e., a restitution fine, does not suffice to state a claim for relief under Section 2254."); *Bustamante v. Lopez*, No. 1:11-CV-00336-GSA-PC, 2013 WL 632258, at *4 n.2 (E.D. Cal. Feb. 20, 2013) ("The Court also notes that the validity of the restitution aspect of Plaintiff's conviction is not cognizable by way of a petition for writ of habeas corpus under 28 U.S.C. § 2254, since it does not affect the fact or duration of his sentence.").

## V.

## RECOMMENDATION

Accordingly, IT IS RECOMMENDED that the petition for writ of habeas corpus be DENIED. (ECF No. 1).

This Findings and Recommendation is submitted to the assigned United States District

Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **FOURTEEN (14) days** after service of the Findings and Recommendation, any party may file written objections, **no longer than fifteen (15) pages, including exhibits**, with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned United States District Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **April 2, 2026**            /s/ *Erica P. Grosjean*

UNITED STATES MAGISTRATE JUDGE